492

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

J. C. HAMILTON, J. C. Hamilton, Jr., Ed.
L. Hamilton, Agnes Hamilton, Sara Lee
Mann, Co-Partners D/B/A The J. C.
Hamilton Company, Respondents.

No. 4953.

United States Court of Appeals,
Tenth Circuit.

March 22, 1955.

Rehearing Denied May 5, 1955.

Nancy M. Sherman, Washington, D. C. (Elizabeth W. Weston, George J. Bott, General Counsel, David P. Findling, Associate General Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., on the brief), for petitioner.

Edward E. Soule, Oklahoma City, Okl. (Lytle, Johnson & Soule, Oklahoma City, Okl., on the brief), for respondents.

Lee B. Thompson, Oklahoma City, Okl. (Roy L. Sullivan and McInnis, Cantrell, Thompson & Sullivan, Oklahoma City, Okl., on the brief), for intervenors.

Before PHILLIPS, Chief Judge, PICKETT, Circuit Judge, and VAUGHT, District Judge.

PICKETT, Circuit Judge.

The National Labor Relations Board instituted this proceeding for the enforcement of its order issued against the respondents who were engaged as a co-partnership in the wholesale distribution of automotive parts and accessories in Oklahoma City, Oklahoma. The Board found that the respondents had unjustifiably refused to recognize and bargain collectively with the International Association of Machinists, AFL, herein referred to as the Union, as the exclusive representative of their employees in an appropriate unit in violation of Section 8(a) (5) of the Act, and that they had interfered with their employees' right to self-organization in violation of Section 8(a) (1) of the Act. 29 U.S.C.A. § 158(a) (5) and (1). Fourteen of the sixteen employees of the respondents seek to intervene in this proceeding and to oppose the enforcement of the order. The respondents have applied to this court for leave to amend their answer to the Board's petition.

The evidence established that on June 18 and 19, 1952, ten of the respondent's seventeen employees signed cards and authorized the Union to act as their collective bargaining representative. The Union mailed a letter to the partnership and stated that it represented a majority of the employees. Two representatives of the Union came to the plant of the respondents and offered to establish the Union's majority through a card check and requested the respondents to recognize and bargain with it as the representative of the employees in that unit.[1]

It is quite evident that the respondents displayed great hostility toward the Union. Members of the partnership made it clear to the Union representatives that they would not tolerate a union within their plant and they refused to examine the proof of the majority status of the Union. Four days later, the Union filed a representation petition with the Board in which it sought certification as the collective bargaining representative of the employees. The Board was then notified that the partnership

1. The unit found appropriate by the Board consisted of all employees at the partnership's plant, excluding professional employees, office clerical employees, guards, watchmen, outside salesmen, and supervisors. Three "part-time outside salesmen" were included in the unit since they spent a major portion of their time working within the plant.

would not consent to an election. Thereupon the Union withdrew its certification petition and filed a charge alleging that the respondents were guilty of unfair labor practices.

On October 3, 1952, the complaint in the instant case was filed by the Acting Regional Director as authorized by the General Counsel of the Board. After hearings, the Board sustained the trial examiner's findings that the partnership's refusal to recognize the Union was motivated by a desire to gain time to undermine the Union's majority, and that its actions violated Section 8(a) (5) and (1) of the Act. These findings were based principally upon threats by the respondents to close the plant or turn it into a warehouse if the Union organized the employees; veiled threats to discharge employees for union activities; orders prohibiting discussions about the Union at any time; and interrogation of employees concerning their union sympathies and activities. The Board also held that under the circumstances the Union's subsequent loss of majority did not extinguish the partnership's duty to bargain. The order now sought to be enforced was entered May 6, 1953. The partnership undertook to comply with the order by posting the required notices and entering into bargaining negotiations with the Union. Without discussion of the evidence in detail, it suffices to say that we have examined the record and find that there is substantial evidence to support the material findings made by the Board.

An employer may withhold recognition from a union which claims to represent a majority of his employees only if he in good faith doubts the union's claims. If the refusal to bargain is the result of a good faith doubt and not a defense to unionization, the employer has the right to have those doubts settled by an election. But when the refusal is motivated by a desire to gain time for the purpose of dissipating the union's majority by coercive tactics, the refusal to bargain is no longer justifiable and constitutes a violation of Section 8(a)

(5) of the Act. N.L.R.B. v. Poultry Enterprises, Inc., 5 Cir., 207 F.2d 522; N.L.R.B. v. Stewart, 5 Cir., 207 F.2d 8; N.L.R.B. v. W. T. Grant Co., 9 Cir., 199 F.2d 711, certiorari denied 344 U.S. 928, 73 S.Ct. 497, 97 L.Ed. 712; N.L.R.B. v. Kobritz, 1 Cir., 193 F.2d 8; Joy Silk Mills, Inc. v. N.L.R.B., 87 U.S.App.D.C. 360, 185 F.2d 732, certiorari denied 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350; N.L.R.B. v. Crown Can Co., 8 Cir., 138 F.2d 263, certiorari denied 321 U.S. 769, 64 S.Ct. 527, 88 L.Ed. 1065. Where the employer wrongfully refuses to bargain with a union which represents his employees, the duty remains to recognize the union and bargain with it even if the union has lost its majority. The employer may not profit by his own wrong. Brooks v. N.L.R.B., 348 U.S. 96, 75 S.Ct. 176; Franks Bros. Co. v. N.L.R.B., 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020; International Association of Machinists, Tool and Die Makers Lodge No. 35 v. N.L.R.B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; Colorado Fuel & Iron Corp. v. N.L.R.B., 10 Cir., 121 F.2d 165. It is the function of the Board, not the courts, to determine how the effect of prior unfair labor practices may be expunged. International Association of Machinists, Tool and Die Makers Lodge No. 35 v. N.L.R.B., supra; Franks Bros. Co. v. N.L.R.B., supra. The right to represent employees, however, is not a permanent relationship which should continue without regard to changing conditions, and the Board, in a proper proceeding upon proper showing, should take necessary steps to recognize changed conditions including any shift in the attitude of the employees. Franks Bros. Co. v. N.L.R.B., supra; Mid-Continent Petroleum Corp. v. N.L.R.B., 6 Cir., 204 F.2d 613, certiorari denied 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 369.

The respondents earnestly contend that they have for more than a year sought in good faith to comply with the Board's order and that their request for an election should have been granted. They have made application to be permitted to amend their answer to show

such compliance. They have submitted a number of documents showing the negotiations between the Union and respondents during the period from June 3, 1953 to June 30, 1954. A summary of these negotiations discloses that the parties were able to agree on many but not all of the terms of a contract and that in the end an impasse was reached. The facts here appear to be indistinguishable from those in N.L.R.B. v. Mexia Textile Mills, Inc., 339 U.S. 563, 70 S.Ct. 826, 833, 94 L.Ed. 1067; and N.L.R.B. v. Pool Mfg. Co., 339 U.S. 577, 70 S.Ct. 830, 94 L.Ed. 1077, where it was held that compliance with an order of the Board is no defense to the Board's petition for judicial enforcement of its order,[2] and that a doubt as to "the Union's ability to muster a majority of the employees in the bargaining unit does not justify the denial of an enforcement decree." Cf. N.L.R.B. v. Crompton-Highland Mills, Inc., 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320. The jurisdiction of Courts of Appeals is limited under the Act to a determination of the validity of the final order of the Board on a complaint, and the enforcement of that order. 29 U.S.C.A. § 160(e); A. F. of L. v. N.L.R.B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347; Manhattan Const. Co., Inc. v. N.L.R.B., 10 Cir., 198 F.2d 320.

What has been said disposes of the contention of the intervening employees that enforcement should be denied because the Union no longer represents them, and that the Board has refused to entertain decertification proceedings instituted by them. Decertification proceedings are to be determined by the Board and not the courts. International Association of Machinists, Tool and Die Makers Lodge No. 35 v. N.L.R.B., supra. We assume under the facts of this case that upon entry of the enforcement order, the Board will take a fresh look at the situation and determine if the respondents have in good faith for a reasonable time sought to comply with the order. If so, the Board should entertain decertification proceedings as authorized by Sec. 9(c) of the Act, 29 U.S.C.A. § 159(c), as an unwanted bargaining representative should not be forced upon the employees.

The enforcement order will issue.

2. In the Mexia Case it was said [339 U.S. 563, 70 S.Ct. 828]:

"We think it plain from the cases that the employer's compliance with an order of the Board does not render the cause moot, depriving the Board of its opportunity to secure enforcement from an appropriate court. Indeed, the Court of Appeals for the Fifth Circuit has apparently recognized this rule both before and after the decision in the instant cases. A Board order imposes a continuing obligation; and the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree." (Footnotes omitted.)