**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**VAPOR BLAST MANUFACTURING COMPANY, Respondent.**

**No. 13149.**

United States Court of Appeals Seventh Circuit.

Feb. 28, 1961.

---

1. McAuliffe v. Mayor, etc., of City of New Bedford, 155 Mass. 216, 29 N.E. 517.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., Stuart

Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Frederick U. Reel, Atty., N. L. R. B., Washington, D. C., for petitioner.

H. William Ihrig, Milwaukee, Wis., Milton Gerwin, Chicago, Ill., Philip L. Padden, Milwaukee, Wis., Earl A. Glick, Chicago, Ill., for respondent.

Before HASTINGS, Chief Judge, KNOCH, Circuit Judge, and MERCER, District Judge.

HASTINGS, Chief Judge.

The National Labor Relations Board (Board) has petitioned this court for enforcement of its order issued against respondent Vapor Blast Manufacturing Company (respondent). The Board found that respondent had violated Section 8(a) (3) and (1) of the Labor-Management Relations Act, 1947 (the Act), 29 U.S.C.A. § 158, by discharging two employees because of their leadership in forming a union of respondent's employees, the Vapor Blast Independent Shop Worker's Association (Independent); further that it had violated Section 8(a) (1) by discharging three other employees because of their participation in concerted activities and by interrogating an employee about his and fellow employees' union activity; that it had violated Section 8(a) (5) and (1) by refusing to recognize and bargain with Independent which was the authorized representative of its employees; and finally that it had violated Section 8(a) (2) and (1) by assisting and supporting the International Union, United Automobile Aircraft and Agricultural Implement Workers of America, CIO (UAW). 126 N.L.R.B. No. 6, 45 L.R.R.M. 1271 (1960).

A brief résumé of the facts sustains the Board's contention that its findings were supported by substantial evidence.

Respondent's factory at Milwaukee, Wisconsin, produces liquid honing machines (devices for finishing rough parts) and related products. In 1949, respondent entered into a collective bargaining contract with Local 575, UAW. The Board found that such local had been defunct in respondent's plant since 1951 because none of the employees were members or had paid dues to the local since that date; because there was no correspondence or bargaining between Local 575 and respondent from 1951 to 1958; and because respondent admitted that between 1950 and 1958 it unilaterally determined hours of work, wage increases and layoffs.

In early August, 1958, there was agitation among respondent's employees for a general pay increase. Employee Strutz, chairman of the informal committee chosen to present the demand to respondent's officials, met with respondent's president. The latter refused to meet with the committee, called Strutz an "instigator and troublemaker," cursed him, shoved him, and discharged him in a burst of intemperate language. Upon hearing of Strutz's discharge, the remainder of the shop employees walked out and began picketing the plant. Subsequently, in accordance with respondent's agreement to negotiate with the committee, all employees, including Strutz, returned to work.

A number of bargaining sessions were held in August but resulted in no agreement. After negotiations broke down on September 2, respondent's employees formed Independent, adopted a constitution and by-laws, and elected Strutz chairman and Kaleya treasurer of the organization. On September 4, Independent's counsel wrote to respondent demanding recognition of Independent. At that time Independent possessed signed membership cards from a majority of the employees in the bargaining unit. Respondent did not reply to the letter; its president was advised by counsel "to ignore it."

Soon after the formation of Independent, respondent's officials called in an employee to inquire of the organizational activities. This employee was told that Strutz and Kaleya were going to be discharged for union activity. Two

days later these employees were discharged. Respondent contends that the discharge was "for economic reasons."

Because of these discharges, the remaining employees voted to strike. The employees walked out and began picketing the plant. Three pickets—Griffa, Westphal, and Strobel—were discharged because respondent felt that they "participated in an unauthorized picket line."

Finally, respondent's counsel told certain employees to meet with the UAW international representative who had signed the 1949 contract, to see if such agreement was still valid. Respondent's president agreed to recognize the UAW local prior to this suggested meeting. At such meeting the UAW representative agreed to participate in respondent's bargaining negotiations only if the employees signed new UAW membership cards. Seventeen employees, a majority of the unit, signed UAW cards in a two-day period. A new contract was entered into between respondent and UAW which provided, *inter alia,* that employees were required to be members of UAW and that dues, fines, and assessments levied by that union would be deducted from employees' pay, i. e., "checked off," and paid directly to UAW.

■ It is clear that there was substantial evidence to support the Board's conclusion that Strutz and Kaleya were discharged because of their leadership in organizing Independent and not "for economic reasons." Respondent has offered a number of explanations why they were discharged, but the Board, weighing the evidence, properly rejected these reasons. Agwilines, Inc. v. National Labor Relations Board, 5 Cir., 1936, 87 F. 2d 146; National Labor Relations Bd. v. Whitin Machine Works, 1 Cir., 1953, 204 F.2d 883; National Labor Relations Board v. San Diego Gas & El. Co., 9 Cir., 1953, 205 F.2d 471. Similarly, respondent engaged in an unfair practice by discharging Griffa, Strobel and Westphal for picketing to protest the unfair discharge of Strutz and Kaleya and respondent's refusal to bargain. N. L. R.

B. v. John S. Swift Company, 7 Cir., 1960, 277 F.2d 641, 646; Time-O-Matic, Inc. v. N. L. R. B., 7 Cir., 1959, 264 F.2d 96, 102.

■ Further respondent unfairly ignored Independent's request to bargain at a time when it represented a majority of the employees. Upon receiving the demand to bargain, respondent did nothing to inform itself of the status of Independent; it merely ignored Independent. This act plus the other unfair conduct rebuts, as the Board concluded, respondent's defense that in good faith it refused to bargain. National Labor Relations Board v. Hamilton, 10 Cir., 1955, 220 F.2d 492, 494. Finally, respondent unfairly assisted UAW; it did not maintain the "strictly neutral attitude" required by the Act. Harrison Sheet Steel Co. v. National Labor Relations Bd., 7 Cir., 1952, 194 F.2d 407, 410.

Respondent does not seriously challenge a number of the Board's findings —it cannot since they rest on uncontradicted evidence—but contritely explains that its conduct was due to a lack of familiarity with the Act's requirements and a misapprehension of the status of the defunct UAW local. However, respondent's conduct, whatever its motives, squarely violated the cited sections of the Act.

We now turn to certain procedural issues respondent raises. Its major complaint is that the Board denied it procedural due process by refusing to grant access to affidavits of charging employees upon respondent's demand for discovery. The demands were made in the period of time prior to the issuance of the unfair labor practice complaint and the hearing on such complaint. Respondent attempted to raise this same issue in a direct action in the district court while the instant proceedings were pending before the Board. We affirmed the district court's dismissal of that action because of the failure of respondent to exhaust its administrative remedies. Vapor Blast Manufacturing Company v. Madden, 7 Cir., 1960, 280 F.2d 205, cer-

tiorari denied 364 U.S. 910, 81 S.Ct. 273, 5 L.Ed.2d 225.

Reference to our earlier opinion indicates the series of requests and refusals made prior to the administrative hearing of the unfair practices complaint:

"In October and November, 1958, six unfair labor practice charges against the Company were filed with Madden, as Regional Director of the Board. Madden commenced an investigation of the charges pursuant to Board rule, 29 U.S.C.A. App. § 101.4. As part of this investigation, certain questions relating to the charges were submitted to several management officials of the Company. Although the questions were answered, the Company contends it was not able to answer fully and fairly because of Madden's denial of its request to inspect the affidavits of witnesses supporting the charges supplied to and in possession of the Board. On March 24, 1959, an unfair labor practice complaint was issued against the Company based upon the result of the administrative investigation of the charges. Early in May, 1959, the Company appealed to the General Counsel of the Board from Madden's denial of an opportunity to inspect the documents in question and from his additional denial of a motion to dismiss the charges due to insufficient evidence. In addition, the Company applied to the General Counsel for permission to inspect the affidavits considered by Madden in his investigation of the unfair practice charges. On May 25, 1959, the General Counsel rejected the Company's appeal and denied its separate application for inspection." Id., 280 F.2d at page 206.

In addition, the record discloses that on June 2, 1959, at the outset of the hearing, respondent repeated its request for these same affidavits "before the gentlemen testify." The trial examiner sustained the General Counsel's objection stating, "There is no provision for such discovery of such matters."

During the hearing, the General Counsel put on thirteen witnesses other than respondent's officials. Respondent did not request the statements of the first six of these witnesses, three of whom were charging parties. Three of the remaining seven witnesses had given statements. At the conclusion of their examination, respondent's attorney demanded, *and the General Counsel produced,* the affidavits these witnesses had given to the field examiner. Respondent's counsel was afforded an opportunity to examine the affidavits before continuing his cross-examination and did not request any additional time.

Respondent's argument made in the prior district court action, which it renews here, has been summarized as follows:

"The Company's central substantive position is that the denial of inspection of the affidavits in the Board's possession irreparably injured it because of its inability to reply adequately to the charges and the complaint and to prepare fully for the unfair practice hearing. It states that the discovery it seeks is authorized by Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A. and it is noted that Section 10(b) of the Labor-Management Relations Act, 1947, 29 U.S.C.A. § 160 (b) (the Act), requires that unfair labor practice proceedings 'so far as practicable [shall] be conducted in accordance with the rules of evidence applicable in the district courts of the United States.' The Company contends that the rules of the Board which allowed the Board to suppress the documents in question here are invalid and unconstitutional. The operation of all these factors, allegedly, deprived the Company of its due process rights to a full and fair proceeding." Id., 280 F.2d at pages 206–207.

The Board's practice of closing its files to pre-trial discovery has been traced in these terms:

"In this and similar actions, parties to Board proceedings have attempted to secure examination of documents in the Board's files. However, in [Section 102.117(b)], 29 U.S.C.A.App., the Board has found confidential and not available to public inspection all evidence collected by the Board (with limited exceptions discussed, *infra*) and all files, documents, reports, memoranda and records, pertaining to the Board's internal management or to the investigative stage of proceedings. The rule makes provision for inspection upon the permission of the Board, its chairman, the general counsel, or any regional director. Lacking such permission, Board employees are prohibited from producing the files and related documents pursuant to a subpoena *duces tecum* or from testifying as to their contents and are instructed to move to quash such subpoena on the ground that the evidence is privileged against disclosure. See Sections [102.117, 102.118], 102.95, 102.31 and 102.66, 29 U.S.C.A. App." Id., 280 F.2d at page 207.

Subsequent to the decision in Jencks v. United States, 1957, 353 U.S. 657, 77 S. Ct. 1007, 1 L.Ed.2d 1103, the Board promulgated a new rule permitting examination of a witness's prior statement for the purpose of impeachment. This regulation states:

"After a witness called by the general counsel has testified in a hearing upon a complaint under section 10(c) of the act, the respondent may move for the production of any statement of such witness in possession of the general counsel, if such statement has been reduced to writing and signed or otherwise approved or adopted by the witness. Such motion shall be granted by the trial examiner. If the general counsel declines to furnish the state-

ment, the testimony of the witness shall be stricken." 29 U.S.C.A. App. § 102.118.

It was pursuant to this latter regulation that respondent's counsel demanded, and had produced for inspection, the affidavits of the three witnesses, as above mentioned.

Examination of Board documents is restricted by the regulations set out, supra, unless the Board consents to production or until after a witness has testified and is subject to impeachment. We hold that these two regulations are not, *on their face*, violative of the constitutional guarantee of procedural due process. The Board possesses the broad power to make rules to guide the internal administration of the agency. It has determined that it is necessary to proper administration to stamp as confidential all documents in its possession. The confidentiality of employee affidavits may well be necessary to preclude employer retaliation and to insure full disclosure to field examiners. The Board's practice does not, *per se*, preclude respondent's right to a fair hearing. N. L. R. B. v. Chambers Manufacturing Corporation, 5 Cir., 1960, 278 F.2d 715, 716; Biazevich v. Becker, D.C. S.D.Cal.1958, 161 F.Supp. 261.

On the issue of statutory interpretation, we hold that the language in Section 10(b) of the Act, supra, relating to the "rules of evidence," does not require the Board to adopt the entire discovery procedure contemplated by the Federal Rules of Civil Procedure. Even if "rules of evidence" is interpreted to mean "rules of procedure," it is in the first instance the responsibility of the Board to formulate its own rules for unfair practice hearings and to determine whether full discovery is "practicable" in such hearings. This is not to say that in certain instances, the *administration* of such rules might not be an abuse of discretion, providing a party made sufficient showing of "need" for the pre-trial production of documents in Board possession. See, Na-

tional Labor Relations Bd. v. Quest-Shon Mark B. Co., 2 Cir., 1950, 185 F.2d 285, 289–290; Poinsett Lumber and Manufacturing Company, 109 N.L.R.B. 1079, 1084 (1954).

■ However, we face no such situation here. Neither before the Board nor here has respondent demonstrated a "need" to examine the documents in question before the administrative hearing except by broad statements that such examination was necessary in its preparation for the unfair practices hearing. Respondent has not shown it was prejudiced, surprised or in any way put at a disadvantage because of the operation of the Board's regulation. At no time did it ask for a continuance.

We conclude that there was no abuse of discretion in the Board's adherence to its rules of practice.

■■ We find no abuse of discretion in the Board's refusal to reopen the proceeding after the Board's order against respondent had issued. We deny respondent's motion, made before this court and taken with the case, to expand the record before us to include material which had not been considered by the Board. Kearney & Trecker Corp. v. National Labor Rel. Bd., 7 Cir., 1953, 209 F.2d 782.

For the reasons stated, the Board's petition for a decree enforcing its order shall be granted.

Enforcement ordered.