Commonwealth *v.* Smith, Appellant.

Argued September 27, 1962. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

2

 

reargument refused August 7, 1963.

*John B. Hannum,* with him *Theodore O. Rogers,* and *Pepper, Hamilton & Scheetz,* for appellant.

*Samuel J. Halpren,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE COHEN, July 2, 1963:

This is an appeal from a conviction of simple assault and battery arising out of a fight between appellant and a police officer on a public highway. At appellant's trial, each of the men maintained that the other was the instigator of the altercation. On this key factual issue, two women who were driving on the highway corroborated the police officer's testimony. At this point in the trial, appellant's counsel requested the trial judge to issue a subpoena duces tecum to compel the F.B.I. to turn over statements given to it by

the two women.[1] Upon being questioned as to the purpose of this production, counsel replied that the statements given to the F.B.I. did not include "any observation of who struck the first blow" and thus could be used to impeach the testimony of the two women. The trial judge refused to issue the subpoena after being informed by a representative of the F.B.I. that the Bureau would not produce the reports because they contained confidential information, the disclosure of which would threaten the security of the Justice Department.

The jury decided the factual question of who instigated the fight adversely to appellant and the Superior Court affirmed the conviction. We granted allocatur because of appellant's claim that the refusal to issue the subpoena deprived him of due process of law contrary to the decision of the United States Supreme Court in *Jencks v. United States,* 353 U. S. 657 (1957). After considering appellant's arguments, we find that the *Jencks* doctrine is inapplicable to the instant case.

In *Jencks,* the United States Supreme Court held that a conviction could not stand where defense counsel was denied access for impeachment purposes to certain F.B.I. reports. In setting forth the rationale for its decision, the Court stated: " '[S]ince the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense. . . .' " (353 U. S. at 671). With regard to the problem of disclosing secret information, the Court concluded that the federal government must either reveal the information or

---

[1] The statements had been secured by the F.B.I. during its investigation of appellant's claim that the arresting officers had violated his civil rights.

abandon the prosecution. Appellant asserts that the *Jencks* decision controls this case.[2]

Although we are in complete agreement with the salutary principle of the *Jencks* case, we find that it has no application to the instant case.

In the first place, it was the F.B.I. and not the Commonwealth which denied appellant access to the information in question. Ironically, the F.B.I. entered this case and made its investigation during which the statements were secured solely because of appellant's claim that the arresting officers had violated his civil rights. The Commonwealth is no more to blame for the unavailability of the F.B.I. reports than if a witness beyond the reach of process refused to voluntarily appear and testify on behalf of appellant. Consequently, the unfairness which troubled the *Jencks* court is not present here.

In addition, we fail to perceive how the defense was harmed by the nonproduction of the F.B.I. reports. The two witnesses gave a statement to the district attorney which also did not include an observation as to who struck the first blow. This statement was given to appellant. Therefore, even if reports of the state police were involved, the offer of proof would not justify the disclosure of confidential information.[3] Cf. *Rosenberg v. United States,* 360 U. S. 367 (1959).

---

[2] In *Palermo v. United States,* 360 U.S. 343, 345 (1959), the Supreme Court explained that the *Jencks* decision was based on the Court's power "to prescribe procedures for the administration of justice in the federal courts", and hence was not necessarily one of constitutional dimension. The Court in *Palermo* held that the subsequent Act of Congress (18 U.S.C. §3500) and not *Jencks* now governed federal prosecutions. In other instances, however, it has been held that the suppression of evidence by the prosecution violates due process of law. See *Brady v. Maryland,* 31 U.S.L. Week 4435 (May 13, 1963); *United States ex rel. Almeida v. Baldi,* 195 F. 2d 815 (3d Cir. 1952), cert. denied, 345 U.S. 904 (1953). Since we hold that the *Jencks* rationale is inapplicable to the in-

It is true that certain remarks made by the plurality opinion in *Schlesinger Appeal,* 404 Pa. 584, 172 A. 2d 835 (1961), lend support to the position taken by appellant. These observations which were based on a misapplication of the *Jencks* case were unnecessary to the result in *Schlesinger* and, to the extent that they are inconsistent with our holding here, they are expressly disapproved.

Order affirmed.

Mr. Chief Justice BELL disqualified himself because his daughter-in-law was a character witness.

---

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I cannot agree with the conclusion reached by the majority nor with the off-hand manner in which it treats and disapproves "certain remarks" in the opinion of Mr. Chief Justice CHARLES ALVIN JONES in *Schlesinger Appeal,* 404 Pa. 584, 172 A. 2d 835 (1961).

In *Schlesinger,* a proceeding instituted to disbar an attorney, this court considered the application of *Jencks v. United States,* 353 U. S. 657, to state actions; we there held: "The Subcommittee denied the appellant's request that it issue a subpoena directed to the

---

stant case, we need not concern ourselves with the correctness of appellant's contention that this case is one of constitutional dimension and hence "controlled" by *Jencks.*

[3] When we are confronted with a subpoena for the production of important impeaching statements in the possession of the Commonwealth, we will then be forced to decide the following difficult questions with which other jurisdictions have struggled: what foundation defendant must establish as to the existence and relevancy of the alleged statements; what role the courts should play in determining the Commonwealth's claim that the statements either are not relevant or contain privileged information; what penalty should be invoked for noncompliance by the Commonwealth. See *People v. Wolff,* 19 Ill. 2d 318, 167 N.E. 2d 197, 199-202 (1960).

F.B.I. to produce the recordings made by the F.B.I. of the meetings at 440 Wood Street, Pittsburgh, as to the making whereof the Committee's witness Dietze had testified. This evidence was proffered to contradict the statements of Dietze, Mazzei and Cvetic, and to show that appellant had never attended or participated in any meetings on the premises described. The Subcommittee also denied the appellant's similar request that it issue a subpoena directed to the F.B.I. to produce the reports which the Committee's witnesses Dietze, Mazzei and Cvetic testified that they had submitted to the F.B.I. covering the matters to which they had testified at the hearing. This proposed evidence was for the purpose of contradicting statements made by these witnesses at the hearing. The appellant was entitled to the requested evidence in both particulars on the basis of the decision of the Supreme Court in Jencks v. United States, 353 U. S. 657 (1957).

"In disposing of the exceptions to the report and recommendation of the Subcommittee the court en banc held the Jencks case to be inapplicable on the ground that it was 'a criminal prosecution and relates to the procedural requirements for Federal prosecution of crime by providing for requirement of fair procedure for the defendant.' The distinction is without merit. In the Jencks case the defendant was charged with perjury for falsely swearing in a non-Communist affidavit which he filed with the National Labor Relations Board. The principal witnesses against him were two informers, Ford and Matusow, hired by the F.B.I. They testified that they had sent reports to the F.B.I. concerning matters to which they were testifying at the trial. The trial court refused the defendant's motion to direct the F.B.I. to produce these reports for inspection. The Supreme Court reversed the defendant's conviction, declaring (pp. 668-669) that 'the petitioner was entitled to an order directing the Government to pro-

duce for inspection all reports of Matusow and Ford in its possession, written and, when orally made, as recorded by the F.B.I., touching the events and activities as to which they testified at the trial . . . Justice requires no less.' The Supreme Court further held (page 666) that *the petitioner was not required to lay a preliminary foundation of inconsistency, because a sufficient foundation was established by the testimony of Matusow and Ford that their reports were of the events and activities related in their testimony.*

"The present appellant is just as much entitled to fair procedure as was the defendant in the Jencks case. A disbarment proceeding is every bit as serious as a criminal trial and often far more so; the penalty of disbarment is certainly harsher than a fine or short imprisonment. *Nor is the rule of the Jencks case peculiar to federal criminal prosecutions; it is a requirement of due process of law.* The appellant has a *constitutional right* to the production of the reports of the witnesses against him, touching the events and activities to which they testified, and to inspect so much of such reports as is relevant to the issue. Justice required no less in the Jencks case, and it requires no less in the instant case." (Emphasis supplied)

I believe the above quoted language of *Schlesinger* to be a correct statement of the law and that the *Jencks* decision applies to the instant case. The majority distinguishes the situation by absolving the Commonwealth of any attempt to deny appellant access to the reports in question. The same circumstances existed in *Schlesinger,* where we reached a conclusion contrary to that now reached by the majority.

I further take issue with the majority's conclusion that appellant's rights were not prejudiced inasmuch as similar statements, given to the district attorney, were made available to the defense. The rule requiring the turning over of statements touching on the tes-

timony of a witness does not require the laying of a foundation of inconsistency; all that is required is a showing that a report was made, touching upon the matter testified to at trial. The fact that similar statements were made available to the defense should not deprive appellant of his right to the statements in question.

The majority cites *Rosenberg v. United States,* 360 U. S. 367, in connection with the proposition that appellant's rights were not trespassed upon, since he had the district attorney's statements. In that case, the United States Supreme Court held that a denial of a request for a document was harmless error, because the defense already had the information. The harmless error referred to was the refusal of the trial court to order the government to turn over to the defense a letter written to the F.B.I. by the witness. The letter indicated that the witness did not trust her memory of the events to which she would testify and she would have to refresh her recollection by rereading her original statement made some three years earlier. The court held that in this instance the *very same* information as contained in the letter, which should have been turned over, was within the knowledge of the defense and hence, refusal of production of the letter, while error, was harmless. The situation here is different. Here there is a report which might contain things other than contained in the District Attorney's reports referred to by the majority. In *Rosenberg,* there is no question that only one piece of information is involved in the letter and the defense had that information. The entire holding of the court on the question is contained in the final paragraph of the *Rosenberg* opinion as follows: *"An appellate court should not confidently guess what defendant's attorney might have found useful for impeachment purposes in withheld documents to which the defense is entitled.* However,

when the *very same* information was possessed by defendant's counsel as would have been available were error not committed, it would offend common sense and the fair administration of justice to order a new trial." (Emphasis supplied.)

Finally, I fail to perceive how we are now faced with any problem which might arise from a refusal of the F.B.I. to turn over the reports, after issuance of a subpoena directing it to do so. The record indicates that the defense made three applications for subpoena duces tecum. 1.) A subpoena was issued without leave of court, in violation of the local rules, and was properly quashed. 2.) An application was made to the court for a subpoena before any witnesses had testified. At that time, the F.B.I. representative was in court in response to the subpoena issued without leave of court. He testified that the material sought was confidential and the trial judge refused the application for subpoena and quashed the subpoena previously issued. 3.) Defendant applied to the court for a subpoena after the witnesses had testified. This application was also refused and forms the basis of the dispute.

Defendant was clearly not entitled to a subpoena without leave of court and the one which issued was properly quashed, irrespective of the position of the F.B.I. with regard to the confidential nature of the records. Under the holding in *Jencks v. United States,* supra, or in accordance with the statute which followed that decision, 18 U.S.C. 3500, defendant was not entitled to a subpoena before witnesses against him, who had given statements to the F.B.I., had testified. The application for subpoena made at the beginning of the trial was, therefore, properly refused, again irrespective of the position of the F.B.I. on the confidential nature of the documents. It was only after the witnesses testified that defendant had a right to a subpoena and at that time his request was denied.

We cannot say with certainty that, had appellant been granted a subpoena when he applied for it at the proper time, the Justice Department would have refused to honor it. I believe that due process required the issuance of the subpoena, without regard to speculation as to its reception by the F.B.I.

Accordingly, I dissent and would grant a new trial to appellant.