**HARVEY ALUMINUM (INCORPORATED), General Engineering, Inc., and Wallace A. Ummel, d/b/a Wallace Detective and Security Agency, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 18273.**

United States Court of Appeals
Ninth Circuit.

Aug. 5, 1964.

Sam F. Speerstra, William B. Wyllie, Rhoten, Rhoten & Speerstra, Salem, Or., for petitioner General Engineering, Inc.

William F. Lubersky, James H. Clarke, Koerner, Young, McColloch & Dezendorf, Portland, Or., Maxwell H. Elliott, Torrance, Cal., for petitioner Harvey Aluminum (Inc.).

John W. Hill, King, Miller, Anderson, Nash & Yerke, Portland, Or., for petitioner Wallace A. Ummel.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh and Seymour Strongin, Attys., N. L. R. B., Washington, D. C., for respondent.

Before HAMLIN, BROWNING, and DUNIWAY, Circuit Judges.

BROWNING, Circuit Judge.

The National Labor Relations Board issued a complaint charging that petitioners engaged in an unfair labor practice [1] by maintaining surveillance of union activities of employees of Harvey Aluminum and General Engineering, Inc., through undercover operatives of the Wallace Detective and Security Agency. Petitioners admitted the surveillance, but insisted that its only object was to detect and prevent pilferage of company property.

Evidence relating to the central issue thus created was in direct and irreconcilable conflict. Two government witnesses (a former Wallace salesman and his wife) testified that Wallace was employed to investigate pro-union employees; managerial employees of Harvey and Wallace testified to the contrary. Three Wallace agents—Davis, Hahn, and Moore—testified that they were instructed to and did conduct union espionage at Harvey plants; seven other Wallace operatives testified that they were employed solely to secure information on pilferage, and denied specific acts of union spying attributed to them by the three government witnesses. The sole

1. Sec. 8(a) (1), National Labor Relations Act, 49 Stat. 452 (1935), as amended, 29 U.S.C.A. § 158(a) (1).

question presented by the record was which witnesses to believe. The Board decided that the testimony of the government's witnesses was to be credited, and that of the petitioners' was not; the order under review rested ultimately upon this determination.

## I

The only direct evidence that Wallace agents spied upon the union activities of employees of Harvey and General was testimony to that effect by witnesses Davis, Hahn, and Moore. Petitioners launched a major assault upon the credibility of this testimony.[2]

In the course of cross-examination, all three of these witnesses testified that they had given statements to the Board and to the Labor Department relating to the nature and purpose of their employment at plants of Harvey and General. Davis also testified that he had given such a statement to the Federal Bureau of Investigation. Petitioners sought to obtain these documents for use in cross-examination. They contend that they were improperly denied access to statements in the possession of the Labor Department and FBI, and that errors were committed in dealing with their requests for production of statements in the Board's possession.

## A.

When it was disclosed on cross-examination that the witnesses had given statements relating to their testimony to the Labor Department and to the FBI, petitioners moved for their production; the motions were denied. Petitioners secured the issuance of subpoenas duces tecum calling for the statements, addressed to the Secretary of Labor and the Attorney General; the subpoenas were later revoked. Petitioners requested the Board to ask the Secretary of Labor and the Attorney General to make the statements available pursuant to 29 U.S.C.A. § 161(6);[3] the request was refused.

Prior to the present proceeding, the Board recognized, under the compulsion of NLRB v. Adhesive Prods. Corp., 258 F.2d 403 (2d Cir. 1958),[4] that the principle announced in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), is applicable to adjudicatory, adversary hearings before the Board.[5] Accordingly, the Board modified section 102.118 of its regulations,[6] which prohibited disclosure of documents in its files except upon written consent of the Board or its General Counsel, by adding the following proviso:

"*Provided*, After a witness called by the general counsel has testified

2. It was shown, among other things, that prior to the hearing Davis and Moore signed affidavits that they had investigated only pilferage and not union activities.

3. 29 U.S.C.A. § 161(6), 49 Stat. 455 (1935):
"The several departments and agencies of the Government, when directed by the President, shall furnish the Board, upon its request, all records, papers, and information in their possession relating to any matter before the Board. * * *"

4. See also NLRB v. American Fed'n of Television & Radio Artists, 285 F.2d 902, 903 (6th Cir. 1961).

5. Ra-Rich Mfg. Corp., 121 N.L.R.B. 700, 701-02 (1958). See also MV Liberator, 136 N.L.R.B. 13, 15 (1962), and Board decisions there cited. See also Note, 57

Mich.L.Rev. 420 (1959). The Jencks rule has been held applicable in adversary, adjudicatory hearings conducted by a variety of administrative agencies. Great Lakes Airlines, Inc. v. CAB, 291 F.2d 354, 364 (9th Cir. 1961); Carlisle v. Rogers, 104 U.S.App.D.C. 307, 262 F.2d 19 (1958); and Petrowicz v. Holland, 142 F.Supp. 369 (E.D.Pa.1956) (Immigration & Naturalization Service, Dept. of Justice); Communist Party of the United States v. Subversive Activities Control Bd., 102 U.S.App.D.C. 395, 254 F.2d 314, 327-328 (D.C.Cir.1958); Schere v. Christenberry, 179 F.Supp. 900, 905-906 (S.D.N.Y.1959) (Post Office Dept.). See also In re Kosuga, 7 Ad.L. (2d Ser.) (Decisions) 379 (1957) (Dept. of Agriculture). See generally Note, 11 Stan.L.Rev. 297, 326-32 (1959); Note, 68 Yale L.J. 1409 (1959).

6. 29 C.F.R. § 102.118 (1964).

in a hearing upon a complaint under section 10(c) of the act, the respondent may move for the production of any statement of such witness *in possession of the general counsel,* if such statement has been reduced to writing and signed or otherwise approved or adopted by the witness. Such motion shall be granted by the trial examiner. If the general counsel declines to furnish the statement, the testimony of the witness shall be stricken." (Emphasis added.)

As construed by the Board, section 102.118 permits production only of statements in the Board's possession.[7] The Board argues that this limitation is valid because Jencks announced a rule of evidentiary procedure for federal district courts, which is binding upon the Board under its Act only "so far as practicable" (29 U.S.C.A. § 160(b)). The Board contends that in adopting section 102.118 it

went as "far as practicable," since the Board could not compel other federal agencies to produce documents from their files.

■■■■ Prior statements of a witness relating to his testimony must be produced by the government because "justice requires no less." Jencks v. United States, supra, 353 U.S. at 669, 77 S.Ct. 1007, 1 L.Ed.2d 1103. The rule applies to proceedings of the Board because " 'the laws under which these agencies operate prescribe the fundamentals of fair play.' Their proceedings must 'satisfy the pertinent demands of due process.' " Communist Party of the United States v. Subversive Activities Control Bd., 102 U.S.App.D.C. 395, 254 F.2d 314, 327 (1958).[8] Whether the compulsion of the rule is constitutional or statutory,[9] the Board may not avoid it by adopting regulations inconsistent with its requirements.[10] We think an

7. Petitioners suggest that the Board's denial that they may once have had possession of the statements themselves, or copies or summaries of them, was equivocal. We assume for purposes of this decision that no employee of the Board ever had access to the statements or to their contents, for we think it is immaterial whether they did or not.

8. Quoting FCC v. Pottsville Broadcasting Co., 309 U.S. 134, 143–144, 60 S.Ct. 437, 84 L.Ed. 656 (1940). See also Great Lakes Airlines, Inc. v. CAB, 291 F.2d 354, 365 (9th Cir. 1961); 36 U.Det.L.J. 192 (1958).

9. See also Note, 11 Stan.L.Rev. 297, 329 (1959):
"Certainly the Jencks rule appears to be a necessary corollary to the governing principle embodied in the Administrative Procedure Act: 'Every party shall have the right * * * to conduct such cross-examination as may be required for a full and true disclosure of the facts.' [60 Stat. 241 (1946), 5 U.S.C. § 1006(c) (1952)]."
Application of the Jencks rule in NLRB unfair labor practice proceedings might also rest upon the statutory requirement that such proceedings "shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of pro-

cedure for the district courts of the United States * * *." (29 U.S.C.A. § 160(b)). Production of statements of the Jencks type would be required in a civil action in federal district court (see authorities cited 11 Stan.L.Rev. 297, 329 n. 173; Carrow, Governmental Nondisclosure in Judicial Proceedings, 107 U. Pa.L.Rev. 166, 173 n. 28 (1958); see also Bernstein v. United States, 256 F. 2d 697, 702–703 (10th Cir. 1958); Communist Party of the United States v. Subversive Activities Control Bd., 102 U.S.App.D.C. 395, 254 F.2d 314, 327 (1958)), and, as we conclude, no special circumstances render application of the rule in Board proceedings impractical. See NLRB v. Capitol Fish Co., 294 F. 2d 868, 872 (5th Cir. 1961); 11 Stan.L. Rev. 297, 327 n. 159.

10. An administrative agency may adopt reasonable rules implementing the underlying principle of Jencks, as Congress did in enacting the Jencks Act (Palermo v. United States, 360 U.S. 343, 353 n. 11, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959)), "so long, of course, as it observes the basic requirements designed for the protection of private as well as public interest." FCC v. Pottsville Broadcasting Co., 309 U.S. 134, 138, 60 S.Ct. 437, 84 L.Ed. 656 (1940). See also Great Lakes Airlines, Inc. v. CAB, 291 F.2d 354, 365 (9th Cir. 1961); NLRB v.

agency regulation does not meet those requirements if, as applied, it limits the availability of prior statements to those which are in the possession of the particular federal agency conducting the hearing.

██ Neither the language nor the rationale of the Jencks opinion or the Jencks Act (18 U.S.C.A. § 3500) permits such a limitation. The Court stated that defendants are entitled to an order directing "the government" to produce statements otherwise within the rule which are in "its possession" (353 U.S. at 668, 77 S.Ct. at 1013, 1 L.Ed.2d 1103); the statute requires the production of statements "in the possession of the United States." The rationale of the rule—when the government relies upon a witness's testimony in support of the government's claim, it cannot in simple justice deny access to prior statements of the witness which may impeach that testimony—applies with equal vigor whether the statements are in the possession of the agency conducting the hearing or of another agency of the government. Obviously, "[t]he value for impeaching purposes of statements of the witness recording the events before time dulls treacherous memory * * *" (353 U.S. at 667, 77 S.Ct. at 1013, 1 L.Ed. 2d 1103) is the same; and it would be

equally unconscionable in either case to deny their use to the person adversely affected by the witness's testimony. The Board, the Department of Justice, and the Department of Labor are all parts of the government of the United States. The proceedings which the Board initiated against petitioners were public proceedings, undertaken on behalf of that government to enforce a public Act.[11]

In a criminal prosecution the Department of Justice would scarcely be heard to say that it was not required to produce statements otherwise within the rule simply because the documents rested in the hands of another federal agency,[12] and we perceive no valid distinction, for this purpose, between that case and this one. The Board relies upon Commonwealth v. Smith, 412 Pa. 1, 192 A.2d 671 (1963), and People v. Parham, 60 Cal.2d 378, 33 Cal.Rptr. 497, 384 P.2d 1001 (1963), but that reliance is misplaced: the United States is a sovereignty separate from the States, and beyond their power to command; but the Departments of Justice and Labor are not sovereign, and though the Board may not be able to compel them to produce documents in their possession, the President[13] or, if need be, the courts,[14] may do so.

The Board argues that the practical result of such a rule is that "the Board must get the statements or lose the

Vapor Blast Mfg. Co., 287 F.2d 402, 407 (7th Cir. 1961); NLRB v. Central Oklahoma Milk Producers Ass'n, 285 F. 2d 495 (10th Cir. 1960); Raser Tanning Co. v. NLRB, 276 F.2d 80, 83 (6th Cir. 1960); 1 Davis Administrative Law §§ 8.02–.03 (1958).

11. "* * * although such proceeding is not a punitive action in the criminal sense, it is a public prosecution by the general counsel charging violations of the Labor-Management Relations Act." Note, 57 Mich.L.Rev. 420, 421 (1959). Cf. Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D.C. 106, 280 F.2d 654, 662 n. 11 (1960).

12. See United States v. Grayson, 166 F.2d 863, 870 (2d Cir. 1948); United States v. Beekman, 155 F.2d 580, 584 (2d Cir.

1946); United States v. Andolschek, 142 F.2d 503, 506 (2d Cir. 1944); Bank Line, Ltd. v. United States, 76 F.Supp. 801, 803–804 (S.D.N.Y.1948) (suit in admiralty). See also Christoffel v. United States, 91 U.S.App.D.C. 241, 200 F.2d 734, 738–739, (1952).

13. See note 2.

14. Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D.C. 106, 280 F.2d 654 (D.C.Cir. 1960). See also Machin v. Zuckert, 316 F.2d 336 (D.C.Cir.1963). Or at least, if compliance is refused, a court may take such steps in the pending action as are appropriate to protect the party adversely affected. United States v. Beekman, 155 F.2d 580, 584 (2d Cir. 1946); United States v. Andolschek, 142 F.2d 503 (2d Cir. 1944).

witnesses," and this "would leave the trial of Board cases at the mercy of the fortuitous coincidence of investigations conducted by this and other agencies—each concerned only with the administration of its laws." This may well be true. An agency other than the Board, viewing the matter from its different vantage point, may conclude that the Board's interest in having the testimony of the witness is not as great as the agency's interest in maintaining the privacy of its files.[15] If the view of the agency in possession of the witness's prior statement prevails, the Board's efforts to enforce its Act may be hampered. This would no doubt be unfortunate. But it would be less defensible still to resolve such agency disputes by permitting the Board to have the benefit of the testimony while denying the opposing party access to statements of the witness in possession of the government by which the testimony might be impeached.

The Board suggests that the "housekeeping" regulations of the Departments of Justice [16] and Labor [17] afford an alternate ground for nonproduction. But such regulations are ordinarily construed as requiring only that the demand for production of agency documents be made upon the head of the agency rather than a subordinate employee,[18] and the subpoenas which petitioners obtained were addressed to the Attorney General and the Secretary of Labor. Such regulations do not justify nondisclosure of their own force.[19]

There is no claim that the documents contained privileged matter,[20] nor, in the circumstances, could there be. The witnesses had testified in public session at the government's behest, and disclosure of the witnesses' written statements was sought only to the extent that they related to the subject matter of this public testimony.[21] Thus, even if we treat respondent's reliance upon the "housekeeping" regulations as an implied claim of privilege, the claim would be patently frivolous. The limited disclosure sought could not prejudice any legitimate governmental interest, and petitioners' need was great.[22]

■■ In denying production of the statements of Davis, Hahn, and Moore in the possession of the Departments of Justice and Labor, the Board erred. But the Board argues that its order should be enforced nonetheless, because the findings upon which it rests were supported by substantial evidence aside from the testimony of Davis, Hahn, and Moore. However, the trial examiner expressly relied upon their testimony, and there is nothing to indicate that the Board on review did not do so also. The case was closely contested, and the testimony of these witnesses was unquestionably important. We cannot assume that the

15. Cf. St. Regis Paper Co. v. United States, 368 U.S. 208, 217, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961).

16. Attorney General Order No. 3229, 18 Fed.Reg. 1368 (1953).

17. 29 C.F.R. § 2.9 (1964).

18. NLRB v. Capitol Fish Co., 294 F.2d 868, 873–875 (5th Cir. 1961); Note, 69 Yale L.J. 452, 456–57 (1960); 68 Yale L.J. 1409, 1414 n. 23 (1959); 8 Wigmore, Evidence § 2378 at 800–01 (McNaughton rev. 1961); 2A Barron & Holtzoff, Federal Practice & Procedure § 651.1 at 110–11 (1961); 4 Moore's Federal Practice § 26.25 at 1553, 1564 (1963); 1 Davis, Administrative Law § 815 at 592–93 (1958).

19. Sperandeo v. Milk Drivers & Dairy Employees Local 537, 334 F.2d 381 (10th Cir., June 8, 1964); NLRB v. Capitol Fish Co., 294 F.2d 868, 872–874 (5th Cir. 1961); Olson Rug Co. v. NLRB, 291 F.2d 655, 611 (7th Cir. 1961).

20. Cf. United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727, 32 A.L.R. 2d 382 (1953).

21. See NLRB v. Capitol Fish Co., 294 F. 2d 868, 875 (5th Cir. 1961); Note, 57 Mich.L.Rev. 420, 422 (1959).

22. Cf. Singer Sewing Machine Co. v. NLRB, 329 F.2d 200, 208 (4th Cir. 1964).

Board would reach the same result if it were further impeached, or excluded.[23]

### B.

Petitioners contend that the Board erred in two respects in dealing with petitioners' efforts to secure statements of Davis, Hahn, and Moore which were in the Board's possession.[24]

■ The Board's trial counsel was sworn and interrogated with respect to the existence of such statements. Petitioners argue that inquiry of counsel was improperly limited, and that his testimony did not negate the possibility that the Board had producible statements other than those which were made available to petitioners. Only one facet of petitioners' argument seems to us to raise doubt. The Board's brief in this court intimates that section 102.118 may not require production of substantially verbatim transcriptions of oral statements which are not "signed or otherwise approved or adopted" by the witness. If it does not, it is to that extent invalid.[25] We think it clear from the record that the trial examiner did not restrict section 102.118 in this fashion. It is possible, however, that trial counsel may have done so, and that this understanding may have qualified his testimony. Any doubt that exists on this score can be resolved readily on remand.[26]

■ Petitioners' second contention is that the trial examiner erred when he ruled, after an *in camera* inspection, that a report of a Board agent regarding a conversation with Hahn contained the agent's impressions and opinions rather than a recording of the conversation, and therefore was not producible. If the trial examiner's characterization of the memorandum was accurate, then, of course, his ruling was permissible.[27] The memorandum is not in the record before us. If petitioners wished review of the trial examiner's determination as to the nature of the report, it was incumbent upon them to see that a record was presented upon which review could be had, by requesting that the memorandum be submitted to the court under seal.[28]

23. NLRB v. American Fed'n of Television & Radio Artists, 285 F.2d 902, 903 (6th Cir. 1961). See also NLRB v. Indiana & Michigan Elec. Co., 318 U.S. 9, 28–29 (1943).

24. We have also examined petitioners' contention that the trial examiner erred in denying their application to take the deposition of the witness Caldwell, and conclude that in all the circumstances the examiner's ruling was a permissible exercise of the discretion vested in him by § 7(b) of the Administrative Procedure Act, 60 Stat. 241 (1946), 5 U.S.C.A. § 1006(b), and § 102.30 of the Board's regulations. 29 C.F.R. § 102.30 (1964).

25. Both the Jencks case and the Jencks Act include such transcribed oral statements. In light of the purpose of the rule, a distinction between such transcriptions and written statements signed or adopted by the witness would be arbitrary.

26. The inquiry should also be free, of course, of limitations which were imposed upon it at the initial hearing because of the trial examiner's erroneous ruling that only statements in the Board's possession were producible.

27. In the exercise of its power to make rules for the conduct of its hearings, the Board could conclude, as Congress did in enacting the Jencks Act, that such reports were not "sufficiently reliable or important for purposes of impeachment to justify a requirement that the government turn them over to the defense." Palermo v. United States, 360 U.S. 343, 353 n. 11, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). Relevant cases under the Jencks Act are collected in Ogden v. United States, 303 F.2d 724, 735 n. 35 (9th Cir. 1962).

28. United States v. Ebeling, 146 F.2d 254, 257 (2d Cir. 1944). See also Appeal of United States Securities & Exchange Com'n, 226 F.2d 501, 510–511 (6th Cir. 1955).

## II

General contends that there is no support in the record for the Board's jurisdictional finding that the activities of General affect commerce within the meaning of sections 2(6) and 2(7) of the Act. 61 Stat. 138 (1935), as amended, 29 U.S.C.A. § 152(6), (7).

The record concededly supported such a finding as to Harvey, and the Board's complaint alleged that "at all times material herein, Respondent Harvey and Respondent General have been affiliated business enterprises with common ownership, control, and labor policy, and constituting a single integrated business enterprise." The facts alleged, if established, justified the Board in treating Harvey and General as a "single employer" for jurisdictional purposes.[29]

In its answer to the Board's complaint, General's response to these allegations was that "Respondent General * * * does not have knowledge or information sufficient to form a belief as to the truth or falsity" of the allegation "and therefore on information and belief denies each and every such allegation." General persisted in this position at the hearing. Counsel for General asserted that he had no knowledge regarding the facts alleged by the Board, and that under the Board's rules this constituted a denial of the allegations and put the Board to its proof. When asked by the trial examiner whether he contended that the facts were other than as alleged, he responded that he was not required to make a contention one way or the other. The trial examiner ruled to the contrary, and advised counsel that his failure to respond would be taken as a concession that the relationship between Harvey and General during the relevant period was such that they might properly be treated as a single employer.

Section 102.20 (29 C.F.R. § 102.20 (1964)) of the Board's rules provides that an answer to a complaint "shall specifically admit, deny or explain each of the facts alleged in the complaint, unless the respondent is without knowledge, in which case the respondent shall so state, such statement operating as a denial."[30] Section 102.21 (29 C.F.R. § 102.21 (1964)) requires that an answer be signed by the attorney for the party on whose behalf it is filed, and provides that "[t]he signature of an attorney constitutes a certificate by him that he has read the answer; that to the best of his knowledge, information, and belief there is good ground to support it * * *."[31]

---

29. See, e. g., Sakrete of Northern California, Inc. v. NLRB, 332 F.2d 902 (9th Cir., May 21, 1964).

30. Reg. 102.20 (29 C.F.R. § 102.20 (1964)) reads:
    "The respondent shall, within 10 days from the service of the complaint, file an answer thereto. The respondent shall specify admit, deny or explain each of the facts alleged in the complaint, unless the respondent is without knowledge, in which case the respondent shall so state, such statement operating as a denial. All allegations in the complaint, if no answer is filed, or any allegation in the complaint not specifically denied or explained in an answer filed, unless the respondent shall state in the answer that he is without knowledge shall be deemed to be admitted to be true and shall be

so found by the Board, unless good cause to the contrary is shown."

31. Reg. 102.21 (29 C.F.R. § 102.21 (1964)) reads in part:
    "An answer of a party represented by counsel shall be signed by at least one attorney of record in his individual name, whose address shall be stated. * * * The signature of an attorney constitutes a certificate by him that he has read the answer; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If an answer * * * is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the answer had not been served. For a willful violation of this rule an attorney may be subjected to appropriate disciplinary action."

■ Under comparable provisions of the Federal Rules of Civil Procedure,[32] an answer asserting want of knowledge sufficient to form a belief as to the truth of facts alleged in a complaint does not serve as a denial if the assertion of ignorance is obviously sham. In such circumstances the facts alleged in the complaint stand admitted.[33]

■ Whether General and Harvey were commonly owned and controlled and possessed a common labor policy were facts necessarily within the knowledge of General's managing officers.[34] On four prior occasions the Board had

addressed itself to the precise issue of whether the relationship between Harvey and General was such that they should be treated as a single employer; and had concluded that it was.[35] General's averment of ignorance was clearly frivolous, and the trial examiner was entirely justified in refusing to accept it as a basis for imposing upon the Board the burden of adducing proof. Administrative hearings, like court hearings,[36] should concern the real issues between the parties.

Remanded to the Board for further proceedings not inconsistent with this opinion.

32. Rule 8(b), Fed.R.Civ.P., reads in part: "A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If he is without knowledge or information sufficient to form a belief as to the truth of an averment, he shall so state and this has the effect of a denial." [Rule 11, F.R.Civ.P., is essentially identical to Regulation 102.21.]

33. Authorities are collected in 2 Moore's Federal Practice ¶ 8.22 (1962); 1A Barron & Holtzoff, Federal Practice & Procedure § 277, at 148–53 (Rules ed. 1960); 5 Cyclopedia of Federal Procedure §§ 15.136–.139 (1951). See particularly Mesirow v. Duggan, 240 F.2d 751, 756 (8th Cir. 1957):
"That was a matter of record in appellee's control and peculiarly within his knowledge, and, under the law and these circumstances, his answer, saying that he "was without knowledge or information sufficient to form a belief" as to that matter, did not constitute a denial of the averments of the petition on that score nor put them in issue, and, hence, in the law's regard, they stood admitted. * * *"

34. Counsel for General appeared to contend that under the Board's rules he

could assert his personal lack of information as to the truth of an allegation as a basis for denial. The position is obviously untenable. The answer required by § 102.20 is filed on behalf of the respondent, and, whoever signs it, must reflect the knowledge of those in charge of the respondent's affairs. Cf. 2 Moore's Federal Practice ¶ 8.22 at 1825 (1962). Sec. 102.21 does not alter this principle. Its purpose is to impose a direct personal obligation upon the attorney who signs the answer to satisfy himself that the pleading is not sham or frivolous. Cf. 2 Moore's Federal Practice ¶ 11.02 at 2103–04 (1962). See Arena v. Luckenbach S.S. Co., 279 F.2d 186, 189 (1st Cir. 1960): "It is a breach of counsel's obligation to the court to file an answer creating issues that counsel does not affirmatively believe have a basis."

35. General Engineering, Inc., 131 N.L.R.B. 901 (1961); General Engineering, Inc., 131 N.L.R.B. 648 (1961), modified on other grounds, 311 F.2d 570 (9th Cir. 1962); General Engineering, Inc., 125 N.L.R.B. 674 (1959); General Engineering, Inc., 123 N.L.R.B. 586 (1959). In the first three proceedings the finding was based upon a re-examination of the underlying facts; in the fourth, upon notice of the prior findings.

36. 2 Moore's Federal Practice ¶ 11.02 at 2104 (1962).