Joseph STARR, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 11299.

United States Court of Appeals Seventh Circuit.

Nov. 2, 1955.

Jack H. Oppenheim, Chicago, Ill., for petitioner.

H. Brian Holland, Asst. Atty. Gen., David O. Walter, U. S. Dept. of Justice, Ellis N. Slack, Robert N. Anderson, Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

DUFFY, Chief Judge.

The Starr Pen Company was a partnership organized in 1935 by members of the Starr family. During 1943 and 1944 Joseph Starr, hereinafter called taxpayer, had a 70 per cent interest in the partnership, and Samuel Starr and Jack Starr each had a 15 per cent interest therein. The distributive income of the partnership was its net income after allowances

for the salaries of the partnership. The business of the partnership was the sale at wholesale of fountain pens and sets of fountain pens and mechanical pencils. The partnership did not manufacture any of the merchandise which it sold.

The Commissioner determined deficiencies for the years 1943 and 1944 claiming that the partnership received "black market" payments from one of its customers, and that the taxpayer failed to report any part thereof in his individual tax returns for those years. After an extended trial the Tax Court found the customer King, Larson and McMahon did make "side-payments" in cash to Starr Pen Company by paying to taxpayer the sum of $223,198.80 and to his partner, Samuel Starr, the sum of $12,-000.00; that such payments were not reflected in taxpayer's returns for 1943 and 1944, and that such deficiency was due to fraud and an intent to evade tax.

The Tax Court found that Martin King, upon behalf of King, Larson and McMahon (hereinafter called K L & M) and taxpayer, upon behalf of Starr Pen Company, entered into an oral agreement about April 15, 1943 whereby Starr Pen Company would sell large quantities of fountain pens and pen and pencil sets to K L & M. That in addition to regular invoice prices which would be paid by check, K L & M would make specified side-payments also referred to as royalties. The Tax Court found that the procedure used in making such payments was that checks of K L & M would be prepared at King's direction, payable to cash. King would cash the checks at a bank and receive currency in large denominations such as bills for $500 and $1000. King would then place the currency for each payment in an envelope and turn same over to taxpayer. In a few instances the currency was paid to taxpayer's brother, Samuel Starr.

It is the claim of taxpayer that he did not have a fair trial before the Tax Court. He first complains that after the conclusion of the testimony the Tax Court delayed three years before making its decision. As we understand taxpayer's argument on this point, the decision in this case depended in large part upon the credibility of witnesses, and taxpayer claims the long delay worked to his disadvantage.

■ Certainly a delay of three years in making a decision in the case at bar is deplorable. However, we do not think it follows that we should hold this unfortunate delay was some kind of reversible error with the result that we would send the case back to the Tax Court which would involve a still further period of delay.

Taxpayer claims he was denied due process because of two rulings of the Tax Court. Prior to trial he filed a motion that he "be permitted to obtain discovery, by depositions and otherwise, of all matters not privileged, which would aid petitioner in the preparation for trial." In this connection taxpayer requested, in the alternative, (1) the Tax Court revise its rules of practice by permitting discovery procedures, or (2) that the Court enter an order permitting discovery in the instant case. Taxpayer's motion for discovery was denied.

■ Taxpayer concedes the Federal Rules of Civil Procedure, 28 U.S.C.A., are not applicable in the Tax Court. It is also without dispute that there is no statute or court rule authorizing discovery procedure in that Court.

■ Discovery procedure has improved the administration of justice and speeded the disposition of civil cases in both state and federal courts. However, it has never been held that the Constitution of the United States requires that discovery procedure be adopted by any court. We are unwilling to make any such decision. In our view, no constitutional question is involved. Furthermore, we think the request that the Tax Court modify its rules was addressed to a matter that was purely discretionary with that court. Board of Tax Appeals v. United States, 59 App.D.C. 161, 37 F. 2d 442. We hold that taxpayer was not denied due process because the Tax Court refused to grant his motion for discovery.

Taxpayer subpoenaed as witnesses upon the trial two special agents of the Intelligence Unit of the Bureau of Internal Revenue. One of them, Edmund, had spent several months investigating the operations of taxpayer's business. The second agent, Worchester, had started his investigation of K L & M about a week prior to trial. The Court ruled that neither agent would be required to testify.

After taxpayer had subpoenaed the special agents he stated to the Court the subjects upon which he desired to question them. As to agent Edmund he stated he wanted "First, to ask what procedures he followed, what he did as to bank deposits, bank statements, and whether he required the petitioner to account for every bank deposit that he had made * * *. And whether he took a list of all the customers of the petitioner during the year 1943, that is before the period of sales by Conklin and Starr, to King, Larson & McMahon, during that period and after that period. Whether or not he didn't make an extensive investigation for the purpose of determining whether there was any evidence whatsoever that petitioner had asked any person or any customer, any single one of them, for any such thing known as a side payment or royalty or overage, anything of that sort. * * * I also intended to ask him whether he didn't make a complete, thorough and exhaustive search and audit of the petitioner's net worth, and as to any property, both real property and personal property, tangible and intangible, petitioner may have had an interest in."

Taxpayer's counsel also stated he wanted to ask Edmund whether he had gone to other cities in following leads, and he then stated "In other words, in summary, I intended to ask him just exactly what he did in the course of his work as an agent of the Intelligence Unit to investigate the petitioner in relation to the charges that have been made by respondent's witnesses in this case." The information which taxpayer desired to obtain from Worchester was stated in very general terms, and pertained to the recently commenced investigation of K L & M.

Government's counsel objected to the witnesses testifying and cited Treasury Regulation 12,[1] reading as follows:

"Whenever a subpoena shall be served upon them" (meaning employees of the Internal Revenue) "they will, unless otherwise expressly directed, appear in court in answer thereto, and respectfully decline to produce the records or give the testimony called for, on the ground of being prohibited therefrom by the regulations of the Treasury Department. Officials disobeying these instructions will be dismissed from the service and may incur criminal liability."

The inherent conflict between the necessity of keeping some official governmental records confidential and the intense desire that justice be done between litigants has given rise to many perplexing questions which the courts have found difficult to solve.[2] Considerations of national security or other public interest are often of controlling importance. Governmental privilege against disclosure of official information often has been asserted.

We do not reach the question whether under any circumstances a special agent of the Intelligence Unit of the Treasury

---

1. The validity of regulations forbidding disclosure promulgated by the Secretary of the Treasury was established in Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 which holding was followed in United States ex rel. Touhy v. Ragen, 340 U.S. 462, 469, 471, 71 S.Ct. 416, 95 L.Ed. 417.

2. See Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L. Ed. 879; United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L. Ed. 417; Rosen v. United States, 245 U. S. 467, 38 S.Ct. 148, 62 L.Ed. 406; Ex parte Sackett, 9 Cir., 74 F.2d 922; In re Valecia Condensed Milk Co., 7 Cir., 240 F. 310.

Department can be compelled to disclose the manner in which he conducted an investigation and to produce papers and documents that he may have obtained. It is apparent from the statement of taxpayer's counsel to the Court indicating the testimony which he sought to elicit from the agents, that such evidence was neither relevant nor material to the issues in this case. Of what moment was it that the agent may have made an investigation as to taxpayer's net worth? True it is that in many cases where direct testimony is unavailable, the Commissioner may be required to rely upon the net worth theory to show the existence of income. However, in the case at bar, the Commissioner was relying upon direct testimony as to the assets, source and amount of unreported income.

■ It also was immaterial as to the procedure which the agent followed in checking the records of the taxpayer. If there was anything in those records that was material to the issues of this case, the records themselves were the best evidence. Here, no demand was made for the production of any specific documents or records. It was apparent taxpayer's counsel was attempting to indulge in a "blind fishing expedition." Gordon v. United States, 344 U.S. 414, 419, 73 S. Ct. 369, 373, 97 L.Ed. 447. We hold, under the circumstances of this case, the exclusion of the testimony of the two governmental agents did not amount to such unfairness as to result in a denial of due process to taxpayer.

■ On the merits we think the Tax Court's findings that cash side payments above invoice prices made to taxpayer, or to his brother for the Starr Pen Company are supported by substantial evidence. King positively testified that he made such payments. Although taxpayer denied receiving same there was much additional corroborating evidence that such payments were, in fact, made. The trial court was entitled to disbelieve the testimony of the taxpayer that he, at no time during the period in question, received side payments or royalties. Far from being erroneous we think the findings are amply supported by the record.

The judgment of the Tax Court is Affirmed.