The **TIMKEN ROLLER BEARING COMPANY**, Canton, Ohio, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 36833.

United States District Court
N. D. Ohio, E. D.

April 28, 1964.

Victor DeMarco, George H. Rudolph, Theodore M. Garver, Jones, Day, Cockley & Reavis, Cleveland, Ohio, John G. Ketterer, Day, Cope, Ketterer, Raley & Wright, Canton, Ohio, for plaintiff.

Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, for defendant.

CONNELL, Chief Judge.

This is an action for a refund of an alleged overpayment of taxes. The plaintiff seeks an order for the production of certain documents under the control of the defendant. The items sought are: (1) reports and memoranda of the Appellate Division of the Internal Revenue Service, Cleveland, Ohio office relating to the plaintiff's advertising expenditures for the years 1951 through 1954, (2) control cards used in connection with plaintiff's income and excess profits tax returns for those years, (3) memorandum dated May 26, 1961 of the conversation between the chief of the Cleveland office and a Washington coordinator for the Internal Revenue Service, (4) transmittal letter(s) by the field agent who examined the plaintiff's returns for the years in question, (5) reports of the technical advisor and a special assistant in the Cleveland office, (6) any communications from third parties to the defendant concerning the disallowance for tax purposes of the plaintiff's advertising expenditures, and copies of any replies by the defendant, including six specific letters. The plaintiff also seeks an order compelling Sanford Schwimmer, Special Assistant in the Appellate Division, Cleveland, Ohio, to answer a question on deposition relating to the criteria he used in deciding to disallow the plaintiff's claimed deductions.

The defendant resists the motions on three grounds: (1) that the plaintiff has failed to satisfy the traditional requirement of "good cause" under Rule 34; (2) the information sought is protected by a formal claim of executive privilege; (3) strong public policy prohibits the disclosure of the internal affairs of governmental agencies.

I

The Government's first objection is couched in terms of good cause, but also challenges the relevance and materiality of the documents sought. The proposition advanced is this: in a refund suit, the dispositive question is whether the taxpayer has overpaid his taxes, and not merely whether the Commissioner's determination is incorrect. Consequently, the subject matter of the motion, i. e., documents which presumably would reveal the criteria by which the Commissioner assessed a deficiency, does not relate to a material issue in this lawsuit. Moreover, since the government has permitted seven agents to be deposed, the information sought here is equally available by deposition, or, in the alternative, by interrogatories under Rule 33. The defendant concludes from this that the plaintiff has not shown good cause to justify production.

At the outset, we summarily dismiss the effect of the defendant's offer of deponents. A careful reading of those depositions reflects a consistent reluctance to reveal any fact or criterion by which these agents determined that the deductions in issue were not "necessary and ordinary" business expense. The most anyone has said is that in his opinion, the claimed expenditures did not relate to the sale of plaintiff's products. This motion represents the last avenue of discovery for the plaintiff to uncover the answer to that simple question: "Why"?

To the objection of materiality, the plaintiff responds by asserting that, to prevail in this action, two steps are necessary: first, to rebut the presumption of

correctness, and then to introduce evidence by which the true determination can be made. The plaintiff relies on language in Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935), where the Supreme Court said:

> The fact that the Commissioner's determination of a deficiency was arbitrarily made may reasonably be deemed sufficient to require the board to set it aside. * * * Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid. 293 U.S. 507, 514, 515, 55 S.Ct. 287, 290, 291.

In the same breath, however, the Court stated that in a refund suit, the taxpayer must show " * * * not merely that the assessment was erroneous but also the amount to which he was entitled." 293 U.S. 507, 514, 55 S.Ct. 287, 290.

■ This does not resolve the issue with which we are confronted: is the presumption of correctness involved in a refund suit? Is the destruction of that procedural device a material element in the plaintiff's case? It is certain that Helvering v. Taylor is of no avail[1] in answering these questions because that case involved an appeal from the Tax Court. There is a well-recognized distinction between the taxpayer's burden of proof in a refund suit and his responsibility before the Tax Court or on appeal

from the Tax Court. As stated by the Second Circuit in Taylor v. Commissioner, 70 F.2d 619, 621 (1935):

> * * * [T]he reason for this is obvious; a plaintiff, seeking an affirmative judgment measured in dollars, must prove how much is due. His claim is for money paid and he must show that every dollar he recovers is unjustly withheld. So it is not enough merely to prove that the tax as a whole was unlawful
>
> * * *.

In reference to refund suits, Courts have used language which suggests a double burden of proof for the taxpayer.[2] In Graham v. United States, 63–2 U.S.T.C. ¶9607 (S.D.N.Y.1963), the Government prevailed because the plaintiff had not met "the burden of proof required to overcome the presumptive correctness of the Commissioner's determination." The Court cited approvingly this language from Dairy Home Company v. United States, 180 F.Supp. 92, 95 (D.C.Minn.1960):

> The burden of proof is upon the plaintiff to establish Dairy's action by a fair preponderance of the evidence. *This burden is added to by the presumption* that in a tax case such as this one, the finding of the Commissioner is correct. (Emphasis added.)

---

1. Nor are other cited cases involving appeals from the Tax Court which emphasize the importance of the presumption. E.g., United Aniline Company et al. v. Commissioner, 316 F.2d 701 (1st Cir. 1963).

2. Commentators have also stressed the two-step process. 10 Mertens, Law of Federal Income Taxation § 58A.35 (rev. ed. 1958). In 3 Casey, Federal Tax Practice § 11.44 (1955), the author states that * * * "[a]s in the Tax Court, one suing for a refund must rebut the prima facie correctness of the Commissioner's determination. * * *" In Smail, Traps in Refund Suits, 39 Taxes 639, 641 (1961), the author speaks of a double burden of proof:

> Refund suits normally have the same roots as Tax Court actions, that is, the assertion of a deficiency by the Commissioner. However, taking the refund route involves differences in addition to the well-known requirement of prepaying the contested tax. In the Tax Court, the taxpayer has one burden of proof—to prove the Commissioner's determination wrong. In refund suits in the district court and Court of Claims there is a double burden of proof. In addition to proving the Commissioner's determination wrong, the taxpayer must prove that the United States owes him a specific amount of money.

In Renstrom v. United States, 220 F. Supp. 688, 691 (D.C.Neb.1963), the Court cited as an elementary principle that "a taxpayer suing for a refund has the burden to show that the revenue service determination is erroneous and that the taxpayer is entitled to a refund." Cf. also Hodoh v. United States, 153 F. Supp. 822, 825 (N.D.Ohio, Weick, J., 1957).

██ In only one case, however, is this issue thoroughly analyzed, and a contrary view is expressed. In Kentucky Trust Company v. Glenn, 217 F. 2d 462 (Sixth Cir. 1954), objection was made on appeal to an instruction in a refund suit to the effect that the law presumes that the Commissioner's determination is correct. Although the precise point of error urged was the limitation on argument by which the trial court effected the impression that the presumption was conclusive, the Sixth Circuit expressed strong dictum on the role of the presumption in a refund suit.

> It is not necessary for a taxpayer, in order to recover an assessment, to prove to, or to convince a jury that the Commissioner acted, in making the assessment, in a manner unwarranted by the actual facts, and unjust to plaintiff. While there is a presumption that the action of the Commissioner is correct, that presumption disappears when evidence is introduced to overcome it. * * The presumption merely calls upon the opposing party to produce proof to establish his case. It is not evidence and may not be given weight as evidence. 217 F.2d 462, 465.

Since the taxpayer is in the position of a plaintiff asserting a claim for money overpaid, his cause is not materially furthered by proving an arbitrary determination by the Commissioner; he must prove that the assessment was incorrect and that he overpaid. His burden of proof is not increased by the presumptive correctness of the Government's determination. 5 Rabkin & Johnson, Federal Income, Gift and Estate Taxation 7228 (1962). Cf. Clark v. United States, 200 F.Supp. 668 (E.D.Tenn.1961); Iroquois Gardens, Inc. v. United States, 197 F.Supp. 94 (W.D.Ky.1961). Thus the Court agrees with the Government that an allegation that the Commissioner acted in a capricious manner is not a necessary element of the taxpayer's complaint, and production of documents revealing the process of determination would not further a material part of the plaintiff's case.

██ However, this does not necessarily preclude production. The language of the Rule permits discovery of a defensive claim as well; the requested items may relate to the defense which the Government will offer. Courts have recognized from the beginning that it is sufficient to show that the requested documents might constitute or contain material evidence. A person seeking discovery is not compelled to prove materiality before being entitled to production.

> Such an interpretation of the rule would place upon it a narrow construction which would severely limit the bounds of the discovery procedure. It might compel a party to know what was in the documents before he had them. One of the basic purposes of the Rules is to enable a full disclosure of the facts so that justice might not move blindly. Beler v. Savarona Ship Corporation, 26 F.Supp. 599, (E.D.N.Y.1939).

It is sufficient if the documents might contain material evidence, or if they might lead to material evidence. G & P Amusement Company v. Regent Theater Company et al., 9 F.R.D. 721 (N.D. Ohio, Jones, C. J. 1949).

██ This is a most unusual case. The Internal Revenue Service has disallowed 91.24% of the cost of all charges in a general account of the plaintiff labeled "Employee and Public Relations" which is devoted to general advertising. It tests the credulity of this Court to say that a responsible business enterprise

will set aside a fund of $330,803.94, as in 1953, and will devote only 8.76% of it to promote the sale of its products. Assuming, as we must, that the Government is acting in good faith, it is reasonable to expect that a novel theory of defense will be interposed to defeat the claim of the plaintiff; it should not be kept secret until the moment of trial. Since the letters and reports sought by this motion will probably clarify the Government's defense, good cause exists for their production.

The Government returns to Kentucky Trust Company v. Glenn, supra, for the proposition that it is

> error to allow the revenue agent to testify as to facts he considered in determining an assessment, since his reasons were *totally* irrelevant. Yet this is, in reality, what the taxpayer seeks to obtain in this action, the reasons for the decisions of repre-
> ·sentatives of the Internal Revenue Service, which reasons are *totally irrelevant*. Defendant's Brief in Opposition, p. 13 (emphasis added).

From this the Government would have us conclude that the documents sought are totally irrelevant. Even if this were a true statement of the holding of that case,[3] it would not bar production; discovery of inadmissible evidence is permissible if it is reasonably calculated to lead to admissible evidence.

For the reasons listed above, the Court finds that good cause exists for the production of these documents. The Court finds, therefore, that the documents sought relate to a material element of the lawsuit, that it is reasonable to ex-

pect that they will lead to admissible evidence, and that good cause exists for the exposure of the information requested.

We move now to consider the defendant's next objection: Executive privilege.

## II

There is such a wealth of case law and comment dealing with this general area that it would be helpful preliminarily to eliminate that which is not involved in this case. The defendant has not directly challenged the Court's right to examine the question of privilege, but this is implicit in the tenor of its briefs. It can no longer be claimed that a naked assertion of privilege by the executive is sufficient to assure non-disclosure. "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." United States v. Reynolds, 345 U.S. 1, 9–10, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1952). Therefore the responsibility of evaluating the claim of privilege devolves upon the Court. This can no longer be questioned.

We are not confronted here with a cloak of secrecy around military information or state papers. The foundation of executive privilege is the unfortunately necessary policy of fettering justice to promote national health. It is, in effect, a choice between the lesser of two evils: on the one hand, we have half-informed litigants who sometimes get justice, if at all, by accident; on the other hand, we might have disruptive publicity of documents, plans and policies which by their very nature must be secret

---

3. The Glenn case involved a claim for refund of federal estate taxes. In the course of trial an agent of the Internal Revenue Service was sworn as a witness and was asked the following question: "Upon what facts or circumstances did you base your determination that the Trust estates were a part of Mr. Schmidt's estate?" The agent was permitted to answer over objection. The Court of Appeals said:

> The testimony of the government witness * * * invaded the province of the jury and permitted the witness to express his opinion as to the ultimate fact. * * * [t]he testimony was incompetent and prejudicial. 217 F.2d 462, 467.

It was for this reason that the criteria of the agent were inadmissible, and not because they are wholly irrelevant.

to be effective. When such secrets relate to the very preservation of this nation, involving the formulation of national policy or the process of national defense there will be no exposure. In Totten v. United States, 92 U.S. 105, 23 L. Ed. 605 (1875), the Supreme Court forbade the disclosure of an alleged spy contract and thereby erected an absolute wall of secrecy around state papers. In Reynolds v. United States, 345 U.S. 1, 11, 73 S.Ct. 528, 533 (1952), the Court recognized that "even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." But there is no claim here that such important matters are involved.

We are concerned here with the investigative reports of an administrative agency and communications relating to its internal management. The Court is cited to no cases establishing an absolute privilege for such material. The term "privilege" as it is used in Rule 34 has the same meaning as it does in the law of evidence. A testimonial privilege is a right which the law gives to a person to withhold otherwise pertinent information. The traditional privileges have been established only after generations of jurists and/or legislators have recognized a social interest greater than a fully informed search for truth. Once established, they are inviolate except by waiver of the possessor. Thus only the client can unseal his attorney's lips; only the patient can authorize disclosure of sickbed confidences. These are examples of absolute privilege, which even a Court may not impinge upon, no matter how compelling the need for disclosure in the particular case.

Therefore it is submitted that those cases cited by the defendant where Courts speak of a "balancing of interests" actually belie the existence of absolute privilege for the items now sought. It is true that a careful weighing occurs *before* the privilege is established; but once the law recognized such a privilege, it is sacrosanct from the discretion of any Judge. The Court must necessarily conclude that there is here no absolute executive privilege from disclosure of administrative reports and internal communications, and therefore declines to recognize this objection of the defendant.

### III

Thus non-disclosure must be predicated, if at all, upon an ill-defined qualified privilege or public policy argument. Most cases in this area speak of the delicate balance to be struck between the two competing interests. This language serves to point up the character of the "privilege" as dependent upon the facts of the instant case. Public policy decisions are essentially *ad hoc* decisions. They call upon the Judge to exercise a restrained discretion after weighing the supplicant interests before him. Of course, precedent is to be relied on as persuasive direction, but the Court is at least partially released from the stricture of *stare decisis*. In examining this conflicting body of authority, which is devoid of a discernible preponderance in favor of either view, it would again be helpful to eliminate certain lines of authority which the Court specifically disavows, or dismisses as irrelevant.

The Court gives no weight to cases decided on the strength of the "housekeeping" statute. 5 U.S.C.A. § 22.[4] The Su-

---

4. The original Housekeeping Act of 1789 read thus: The head of each Department is authorized to prescribe regulations, not inconsistent with law, for the government of his Department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it. Rev.Stat. § 161 (1875). In 1958 the statute was amended by this sentence: This section does not authorize withholding information from the public or limiting the availability of records to the public. 72 Stat. 547 (1958).

preme Court, in Boske v. Comingore, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846 (1900), acquiesced in the executive misinterpretation of this statute and permitted the statute to be used to effect secrecy. However, since the 1958 amendment, it is no longer necessary to follow the Boske case; this was clearly pointed out in N. L. R. B. v. Capitol Fish Company, 294 F.2d 868, 875 (5th Cir. 1961):

> 5 U.S.C.A. § 22 cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged. Its function is to furnish the departments with housekeeping authority. It cannot bar a judicial determination of the question of privilege or a demand for the production of evidence found not privileged. Had there been any doubt of this before, the doubt was removed by the amendment of 5 U.S.C.A. § 22 in 1958 making explicit the fact that the section does not of itself create a privilege.

 The Court gives no weight to cases based upon a theory of waiver. It has been held that the Government, by prosecuting a criminal action, by suing as a plaintiff in a civil case, or by consenting to be sued civilly as a defendant, has waived its privilege for governmental secrets. Fleming v. Bernardi, 4 F.R.D. 270 (N.D.Ohio 1941); United States v. Continental Can Company, 22 F.R.D. 241

(S.D.N.Y.1958); Evans v. United States, 10 F.R.D. 255 (1950); Wunderly v. United States, 8 F.R.D. 356 (E.D.Pa. 1948); United States v. General Motors Corporation, 2 F.R.D. 528 (N.D.Ill.1942). It is axiomatic that Government is "subject to the rules of discovery" just as any other litigant, United States v. Proctor & Gamble Company, 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958); but the mere consent to litigation does not operate as a waiver of privilege in that litigation. Mitchell v. Roma, 265 F.2d 633 (3rd Cir. 1959); United States v. Proctor & Gamble Company, 25 F.R.D. 485 (D.C.N.J.1960).

 With the possible exception of Items 7 and 8,[5] we are not concerned with the "informer's" privilege in this case. To promote the enforcement of law, we encourage private citizens to make full disclosure to law enforcement agencies; to quiet the volunteer's fear of reprisal, the law promises him anonymity. This is rooted in the common law, and has been sanctioned by the Supreme Court in Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957):

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged

---

5. 7. All written communications addressed to any of the officers, agents, employees or representatives of defendant's Internal Revenue Service agencies from any person or persons not connected with or employed by defendant, concerning the disallowance for tax purposes of expenditures by plaintiff for its advertising and radio programs at issue in this action.

8. Copies of all answers to such communications from persons not connected with or employed by defendant by any officers, agents, employees or representatives of defendant's Internal Revenue Service agencies, including particularly, but without limitation, the following answers by the following persons:

T. Edelschein, Acting Chief, Corporation Tax Branch. Letter of February 21, 1955.
Earl C. Heft, Chief, Corporation Tax Branch. Letter of May 3, 1954.
E. I. McLarney, Deputy Commissioner. Letters of October 17, 1951 and November 14, 1951.
Mortimer M. Caplin, Commissioner. Letter of July 31, 1961.
Defendant has possession, custody or control of each of the foregoing documents, and each of them constitutes or contains evidence relevant to the subject matter involved in this action, as is more fully shown in Exhibit A hereto attached.

with enforcement of that law. [Citations omitted.]

There is very little authority on the applicability of the informer's privilege to civil cases, although "violations of the law" may well be of a civil nature, such as an innocently inaccurate tax return. The privilege was extended to the government in United States v. Deere, 9 F.R.D. 523 (D.C.Minn.1949) and in United States v. Kohler Co., 9 F.R.D. 289 (E.D.Pa.1949). In Mitchell v. Bass, 252 F.2d 513 (8th Cir. 1958), the Court hinted that the privilege might be unavailable where the statement "would not embarrass the informants in their social relations or their employment or endanger their safety." We agree with the reasoning of the Eighth Circuit; the Court orders the defendant to remit Items 7 and 8 of the motion to the Court for an *in camera* inspection. If it is found that no informer's privilege is tenable, or that the plaintiff is not in a position to embarrass the informer, they will be turned over to the plaintiff.

In perusing the authorities cited by the Government, we are most impressed by the opinion of Mr. Justice Reed sitting by designation in Kaiser Aluminum & Chemical Corporation v. United States, 157 F.Supp. 939, 141 Ct.Cl. 38 (1958). He stated the problem thus:

> Free and open comments on the advantages and disadvantages of a proposed course of governmental management would be adversely affected if the civil servant or executive assistant were compelled by publicity to bear the blame for errors or bad judgment properly chargeable to the responsible individual with power to decide and act. Government from its nature has necessarily been granted a certain freedom from control beyond that given the citizen. It is true that it now submits itself to suit but it must retain privileges for the good of all.

> There is a public policy involved in this claim of privilege for this advisory opinion—the policy of open, frank discussion between subordinate and chief concerning administrative action.

Having stated the problem, Mr. Justice Reed then concluded that the particular inter-office opinions were among "that class of governmental documents that are privileged from public inspection as against public interest *but not absolutely*." Id. (Emphasis added). In considering the circumstances around the demand, he found that nothing alleged by the plaintiff suggested any *need* for the document. 157 F.Supp. 939, 947. Consequently the claim of privilege was upheld in lieu of a compelling necessity that the plaintiff see the report.

In Machin v. Zuckert, 114 U.S.App. D.C. 335, 316 F.2d 336 (1963), cert. denied 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed. 2d 124 (1963), an accident involving an Air Force plane resulted in a suit against the United States under the Federal Tort Claims Act. After an offer of partial disclosure of the Air Force file by the Secretary, the plaintiff unsuccessfully sought production of the entire Air Force investigation report in the District Court. The Court of Appeals upheld, in part, the claim of privilege. Feeling that full disclosure might "impair the national security by weakening a branch of the military", the Court nevertheless ordered the disclosure of

> certain portions of the report [which] could be revealed without in any way jeopardizing the future success of Air Force accident investigations. We refer to the factual findings of Air Force mechanics who examined the wreckage. 316 F. 2d 336, 340.

After complaint by the plaintiff that the Government had not complied with the

original opinion, the Court filed a supplemental opinion in which it held:

> If the mechanics expressed any "opinions" or "conclusions" as to possible defects in the propellers or propeller governors that might have been due to the negligence of United Aircraft, we do not consider that such expressions would come within the privileges enunciated in our opinion. 316 F.2d 336, 341.

So, in effect, the Court ordered the production of everything that might have been pertinent to the action.

Thus in the cases most favorable to the government on the general subject of governmental non-disclosure, we find two elements not present in this case. In the Kaiser case there was no showing of need for the requested report; in the Machin case, (in addition to cooperation by the Government) we find limited disclosure permitted almost to the point where military secrets might be involved.

On the other hand, there are cases which authorize discovery. For example, in Olson Rug Company v. N. L. R. B., 291 F.2d 655 (7th Cir. 1961), the Court recognized that "privilege as to advisory opinions is conditional" and declined to recognize the privilege as to documents "bearing on this factual issue of Olson's defense" and authorized "discovery to preclude prejudice and unfairness." 291 F.2d 655, 661–662.

In examining the cases involving the precise point before us—production of Internal Revenue records—we find an almost equal division of authority. In Frazier v. Phinney, 24 F.R.D. 406 (S.D. Tex.1959), a refund suit, the Court disallowed a claim of privilege as to agents' reports which formed the basis for tax deficiencies and penalties asserted against the plaintiff. The Government in that case had been uncooperative in informing the taxpayer of the basis of the deficiency; it is apparent in the instant case that a similar reluctance has precluded the taxpayer from any knowledge of the Internal Revenue Service's contentions. We are impressed by the language of the Frazier case:

> It cannot be argued that the basis for their alleged tax deficiencies is peculiarly within the knowledge of plaintiff taxpayers and that they know, as well as the Government can know, why deficiencies were assessed against them. Plaintiffs are entitled to know what defendant's claims and contentions may be. Defendant cannot prevent speedy adjudication of plaintiffs' alleged tax deficiencies by refusing to give them any information at all. 24 F.R.D. 406, 410.

In United States v. San Antonio Portland Cement Company, 33 F.R.D. 513 (W.D.Tex.1963), a suit by the Government to recover an allegedly erroneous refund, production of IRS records was ordered because no military or state secrets were involved, nor would the production of these documents have threatened the security of the nation.

> They relate only to the allowance of a refund of taxes to the defendant and no contention otherwise has been made. It would be unconscionable, under the circumstances, for the Government to be permitted to prosecute this suit * * * invoke governmental * * * privileges * * * to deprive the defendant of matters which might be material to its defense. In this type of case the defendant should not be kept in the dark, but, on the contrary, a full disclosure should be made. 33 F.R.D. 513, 515.

On the other hand, we find that this Court, through Judge McNamee, had occasion to allow a claim of privilege for the Government in E. W. Bliss Company v. United States, 203 F.Supp. 175 (N.D. Ohio 1961). The language of the opinion, however, clearly shows that the case is distinguishable from the instant case:

> It is not apparent that the production of the transmittal letters is es-

sential to the proper presentation of plaintiff's case. *Good cause for the production of such documents has not been shown,* and in the circumstance of this case the Government's claim of privilege is well taken. 203 F.Supp. 175, 176. (Emphasis added.)

In Cenname v. Bingler, 61–1 U.S.T.C. para. 15, 346 (W.D.Pa.1961), the Court upheld the claim of privilege; the short *memorandum* shows, however, that Judge Marsh relied upon the Reynolds case and the Kaiser case. We have already stated our reasons for departing from these holdings, so the Cenname case is not persuasive.

Finally, we are confronted with Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962), which the Government says "severely limited if not disapproved entirely" Frazier v. Phinney, supra. (Defendant's brief, p. 15). Although discovery was denied in that case, the Court prefaced its remarks with this observation:

> In a mine-run civil case the discovery provisions of the Federal Rules of Civil Procedure apply to claims against the Government, and courts have imposed sanctions upon the Government for disobeying orders to allow discovery. Usually,

when the taxpayer is seeking a refund or resisting payment of a tax deficiency assessed against him the United States is just another litigant. In such cases we start with the feeling that fundamental fairness to both sides—the Government starts with a great advantage in investigative resources—requires recognition of the taxpayer's right to pre-trial discovery of the reports of the Internal Revenue Agents who examined the taxpayer's books and records. 307 F.2d 478, 485.

The Court there concluded its opinion with a summary of nine significant factors [6] which militated against discovery; since seven of those factors are not involved in this case, we do not read the Campbell case as a directive to ignore the taxpayer's right to pre-trial discovery.

We find support for a policy of disclosure not only in these authorities, but also in the principles upon which this nation was founded. We find support for disclosure, as did Judge Maris in Reynolds v. United States, 192 F.2d 987 (3d Cir. 1951), in which that Court quoted the words of Edward Livingston and Patrick Henry, to the effect that government by secrecy is dangerous to the very preservation of that government.

---

6. Summarizing, in balancing the individual's right to prepare his case promptly against the public interest in withholding the full disclosure sought here, the following elements tip the scales in favor of the District Director: (1) discovery would give the taxpayer possession of reports denied him in the criminal proceeding; (2) there is reason to think, "to be honest about it", that the motion for discovery (if not the suit for refund) was for the purpose of obtaining the otherwise unobtainable reports; (3) the Government was not the moving party seeking to recover while withholding information that might defeat recovery; it assessed no deficiency and asserted no counterclaim; (4) the District Director did not claim an absolute privilege but asked only for a reasonable delay; (5) the record is bare of any showing that a reasonable delay would have prejudiced the taxpayer in the civil suit; (6) limited discovery by interrogatories and other remedies were available to the taxpayer; (7) the success of the taxpayer's suit depended on the truth or falsity of his own records and his knowledge of his own financial affairs; (8) the taxpayer filed a motion to dismiss with prejudice; (9) that motion to dismiss, following the Director's notice to take the taxpayer's deposition, raises a fair inference that the taxpayer, instead of making the same full disclosure he was asking from the Government, intended to claim his privilege against self-incrimination. In short, the taxpayer failed to show good cause for the order of discovery issued in this case. 307 F.2d 478, 490.
The only factors which are in any way involved in this case are (6) and (7).

We find support for disclosure in the words of Chief Justice Marshall, ordering the production of a letter to President Thomas Jefferson in United States v. Aaron Burr, 25 Fed.Cas. pages 1, 37, No. 14,692;

> When a paper is in the possession of one party, [and] it is completely in his power, and is required by the other party, very strong reasons must be given to justify its being withheld, if it have any relation to the case. \* \* \* Yet it is a very serious thing, if such letter should contain any information material to the defense, to withhold from the accused the power of making use of it. It is a very serious thing to proceed to trial under such circumstances.

We find support for disclosure in the cry of certain irate Bostonians who once coined a phrase, which once had meaning, about "taxation without representation." The founders of this country rebelled again and divorced us from that system of tyrannical taxation by secret enactment. Does it make any difference to the taxpayer whether a levy is passed in secret, or that the execution of that levy is processed in secret? We think not. Therefore, if our decision be based on policy considerations, we find every reason in precedent and principle for formulating a policy of disclosure.

It is ordered that the defendant produce the requested documents for the plaintiff's inspection and copying, with the exception of Items 7 and 8, which will be submitted to the Court *in camera* to determine the extent to which any possible informer's privilege might be involved. For these same reasons, it is further ordered that agent Sanford Schwimmer answer the question propounded to him on deposition relating to the criteria he used in evaluating the plaintiff's tax returns.